IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Jesse Prim,                          :

     Plaintiff,                    :      Case No. 2:14-cv-1219

v.                                   :      JUDGE MICHAEL H. WATSON
                                            Magistrate Judge Kemp
Dr. Wanza Jackson,                   :

     Defendant.                    :

_____


Lambert Dehler,                      :

       Plaintiff,                 :

     v.                            :      Case No. 2:14-cv-2099

Gary C. Mohr, et al.,                :      JUDGE MICHAEL H. WATSON
                                            Magistrate Judge Kemp
     Defendants.                   :

<u>REPORT AND RECOMMENDATION</u>

    Plaintiff, Lambert Dehler, an inmate currently housed at
Grafton Correctional Institution, has brought this action against
several state employees in their individual and official
capacities pursuant to 42 U.S.C. §1983.  His case has been
consolidated with four other cases and all matters related to
these cases are required to be filed under the case <u>Prim v.
Jackson</u>, 2:14-cv-1219.

    Mr. Dehler alleges that Defendants violated the First,
Eighth, and Fourteenth Amendments to the United States
Constitution, the Religious Land Use and Institutionalized
Persons Act of 2000 (RLUIPA), and retaliated against him when he
sought to assert his rights.  Two of the Defendants, Director
Mohr and Deputy Warden Spatny, have filed a motion to dismiss

(Doc. 7), which has been fully briefed.  For the following
reasons, it is recommended that the Court grant in part and deny
in part the motion to dismiss.

I.  <u>The Complaint</u>

The following facts are all taken from Mr. Dehler's
complaint.  Because Mr. Dehler is without counsel, his complaint
must be liberally construed.  <u>See Haines v. Kerner</u>, 404 U.S. 519
(1972).  Rather than set forth all of the allegations in the
complaint, this summary will focus on the three claims that Mr.
Dehler has brought against either Defendant Mohr or Defendant
Spatny and his allegations with respect to their involvement.

First, Mr. Dehler alleges that he was prevented from
celebrating the Passover Seder in April of 2014 by Defendant
Smith.  In conjunction with that deprivation, Mr. Dehler filed an
Informal Complaint Resolution ("ICR") against Defendant Smith to
his supervisor, Defendant Spatny.  (Doc. 3 at ¶13).  In response
to that ICR, Defendant Spatny stated that the deprivation was due
to a misunderstanding.  (Doc. 3 at ¶19; Doc. 3-1 at page 9).

Second, Mr. Dehler alleges that Defendants violated his
rights under the First and Fourteenth Amendment, the Eighth
Amendment, and RLUIPA when they refused "to establish a
correctional officer post at the GCI chapel to protect female
staff and inmates and open the chapel for religious services."
(Doc. 3 at page 27, Claim Four).  He claims that the lack of a
Corrections Officer is a security issue for female staff in the
chapel, prevents outside ministers from coming to minister to the
inmates when the Chaplain is out, and results in the chapel's
being closed from Friday night to Saturday night, which prevents
Mr. Dehler from worshiping on his Sabbath in the chapel.  (Doc. 3
at ¶41; Doc. 3-1 at page 16).  In response to Mr. Dehler's ICR on
this issue, Defendant Spatny replied, "I do not have the
authority to create an officers post.  That is granted by the

2

Operations Support Center." (Id.; see also Doc. 3 at ¶56).  Mr. Dehler also wrote to Defendant Mohr regarding the request for a Corrections Officer post to be created at the chapel, and he alleges as follows:

> Defendant Mohr did not reply to Plaintiff's letter of 8-8-14 asking for a C.O. post at the GCI chapel. Plaintiff put Defendant Mohr on notice that no C.O. Post at the GCI chapel denies him the free exercise of his religion under the 1st and 14th Amendments and also violates RLUIPA because inmates have an equal protection right at other faith-based housing units in Ohio prisons being allowed to practice their chosen faith, free of retaliation by the chaplain, and have C.O. posts in their chapels to allow reasonable access to their faith, even on the Sabbath, and other Jewish Holy Days (High Sabbaths).

(Doc. 3 at ¶¶ 61, 64, 93-97).

Third, Mr. Dehler alleges that Defendant Jackson denied him kosher meals.  While he alleges that Defendant Jackson was the final decision maker, he alleges that she listened to the recommendations of Defendants Smith and Spatny when she denied him the kosher meals.  (Doc. 3 at ¶¶ 87-88).  As a result, he brings that claim against Defendant Spatny as well as Defendants Smith and Jackson.

## II.  Standard

A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009).  Rule 8(a) admonishes the Court to look only for a "short and plain statement of the claim," however, rather than requiring the pleading of specific facts. Erickson v. Pardus, 551 U.S. 89 (2007).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  5A Wright & Miller, Federal Practice and Procedure §1356 (1990).  The moving party is entitled to relief only when the complaint fails to meet this liberal standard.  Id.

On the other hand, more than bare assertions of legal conclusions are required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).  A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  Id. (emphasis in original, internal quotations and citations omitted).  As stated by the First Circuit and cited approvingly by Scheid:

> "[w]e are not holding the pleader to an impossibly high
> standard; we recognize the policies behind rule 8 and
> the concept of notice pleading.  A plaintiff will not
> be thrown out of court for failing to plead facts in
> support of every arcane element of his claim.  But when
> a complaint omits facts that, if they existed, would
> clearly dominate the case, it seems fair to assume that
> those facts do not exist."

Id. (citing O'Brien v. DiGrazia, 544 F.2d 543, 546 n.3 (1st Cir. 1976)).  It is with these standards in mind that the motion to

dismiss will be decided.

### III. Discussion

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998) (internal quotations and citations omitted). A plaintiff seeking relief under § 1983 may bring a claim against a public official in the official's individual or official capacity. Individual-capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). In contrast, an official-capacity claim is "another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Mr. Dehler has sued all Defendants in their individual and official capacities. In their motion to dismiss, Defendants Mohr and Spatny do not address the distinction between claims brought in an individual and official capacity, but based on the arguments in the motion to dismiss, the Court construes the motion to dismiss as seeking dismissal of only the claims against Defendants Mohr and Spatny in their individual capacities.

Turning first to the allegations against Defendant Spatny, most of the allegations against him deal with his role in the grievance process. With respect to Mr. Dehler's claim that he was prevented from celebrating the Passover Seder in April of 2014, he alleges that the person responsible for that deprivation was Defendant Smith. When Mr. Dehler filed an ICR against Defendant Smith to his supervisor, Defendant Spatny, Defendant Spatny stated that the deprivation was due to a misunderstanding.

(Doc. 3 at ¶19; Doc. 3-1 at page 9).  Mr. Dehler argues that the response to the ICR was inaccurate.  Similarly, with respect to Mr. Dehler's claim that his rights were violated when Defendants refused "to establish a correctional officer post at the GCI chapel to protect female staff and inmates and open the chapel for religious services," his only allegations against Defendant Spatny were that in response to Mr. Dehler's ICR on this issue, Defendant Spatny replied, "I do not have the authority to create an officers post.  That is granted by the Operations Support Center." (<u>Id</u>.; <u>see also</u> Doc. 3 at ¶56).  Mr. Dehler argues that Defendant Spatny violated Mr. Dehler's rights by refusing to establish a correctional post at the GCI chapel because he "could have fixed this problem being Spatny holds the second-highest position at GCI, being a deputy warden. . . .  Instead of taking affirmative action to fix this very serious breech [sic] of security, Spatny chose to decide it was the fault of Columbus (Operations Support Center) . . . ." (Doc. 10 at 3).  However, even as Mr. Dehler has reframed the issue, the allegation at issue remains an allegation that Defendant Spatny wrongly denied a grievance.

A mere denial of a grievance is not actionable under §1983 where that denial did not cause or contribute to the constitutional violation.  "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under §1983." <u>Grinter v. Knight</u>, 532 F.3d 567, 576 (6th Cir. 2008) (citations omitted); <u>see also</u> <u>Argue v. Hofmeyer</u>, 80 Fed. Appx. 427, 430 (6th Cir. 2003) (holding that the plaintiff failed to state a claim concerning the alleged interference with his ability to file grievances "because there is no inherent constitutional right to an effective prison grievance procedure").  An official's failure to act may rise to the level of a constitutional violation where

that failure is an abandonment of "the specific duties of his position ... in the face of actual knowledge of a breakdown in the proper workings of the department," that "result[s] directly in a violation of the plaintiff's" constitutional rights. <u>Hill v. Marshall</u>, 962 F.2d 1209, 1213 (6th Cir. 1992) (involving an official who repeatedly failed to review and respond to the medical needs of the prison population); <u>see also</u> <u>Williams v. McLemore</u>, 247 Fed. Appx. 1 (6th Cir. 2007) (following the denial of the plaintiff's grievance, the plaintiff was stabbed). However, there is no liability where officials' only involvement was to deny administrative grievances and to fail to remedy the alleged behavior or intervene on the inmate's behalf. <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999). Furthermore, the wrongful denial of a grievance "does not present a deprivation of any federal right, as there is no inherent constitutional right to an effective prison grievance procedure." <u>Keenan v. Marker</u>, 23 F. App'x 405, 407 (6th Cir. 2001) (citations omitted). Accordingly, while inmates who exhaust the prison grievance process without obtaining relief may seek relief in the district courts, <u>see, e.g.</u>, <u>Walker v. Michigan Dep't of Corr.</u>, 128 F. App'x 441, 446 (6th Cir. 2005), such relief would be for the underlying constitutional violation and not for the wrongful denial of the grievance.

The remaining allegations against Defendant Spatny relate to Mr. Dehler's claim that Defendant Jackson denied him kosher meals. While he alleges that Defendant Jackson was the final decision maker, he alleges that she listened to the recommendations of Defendants Smith and Spatny when she denied him the kosher meals. (Doc. 3 at ¶¶ 87-88). As a result, he brings that claim against Defendant Spatny as well as Defendants Smith and Jackson. He also argues that Defendant Spatny was personally involved in the denial of his kosher meals because

7

Defendant Spatny "could have overruled the recommendations of
Chaplain Smith when the Religious Accommodation form was sent to
Defendant Wanza Jackson for final approval, yet refused to submit
a positive recommendation, which could have averted this
lawsuit." (Doc. 10 at 2). The allegation against Defendant
Spatny relates to his role as Defendant Smith's supervisor and
his role advising Defendant Jackson, but there is no allegation
that Defendant Spatny himself deprived Mr. Dehler of his kosher
meals.

Persons sued in their individual capacities under §1983 can
be held liable based only on their own unconstitutional behavior.
Heyerman v. Cnty. of Calhoun, 680 F.3d 642, 647 (6th Cir. 2012)
(citing Murphy v. Grenier, 406 Fed. Appx. 972, 974 (6th Cir.
2011) (unpublished opinion) ("Personal involvement is necessary
to establish section 1983 liability") & Gibson v. Matthews, 926
F.2d 532, 535 (6th Cir. 1991) (noting that personal liability
"must be based on the actions of that defendant in the situation
that the defendant faced, and not based on any problems caused by
the errors of others, either defendants or non-defendants")).
Consequently, unless the plaintiff's complaint affirmatively
pleads the personal involvement of a defendant in the allegedly
unconstitutional action about which the plaintiff is complaining,
the complaint fails to state a claim against that defendant and
dismissal is warranted. See Bellamy v. Bradley, 729 F.2d 416,
421 (6th Cir. 1984). This rule holds true even if the supervisor
has actual knowledge of the constitutional violation as long as
the supervisor did not actually participate in or encourage the
wrongful behavior. See Shehee v. Luttrell, 199 F.3d 295, 300
(6th Cir. 1999) (prison officials cannot be held liable under §
1983 for failing to respond to grievances which alert them of
unconstitutional actions); see also Stewart v. Taft, 235 F. Supp.
2d 763, 767 (N.D. Ohio 2002) ("supervisory liability under § 1983

8

cannot attach where the allegation of liability is based on a mere failure to act"). This same analysis also applies to claims brought under RLUIPA. See Greenberg v. Hill, No. 2:07-CV-1076, 2009 WL 890521 at *3 (S.D. Ohio Mar. 31, 2009) ("In order to establish liability under RLUIPA (and Section 1983), a plaintiff must prove, among other things, the personal involvement of each defendant in the alleged violation." (citations omitted)).

Here, there is no allegation that Defendant Spatny, as Defendant Smith's supervisor, encouraged Defendant Smith to deny Mr. Dehler kosher meals. The allegation that Defendant Spatny's advice encouraged Defendant Jackson to make the decision that she did is not enough to state a claim here where the Complaint acknowledges that Defendant Jackson made the final decision and Defendant Spatny was not Defendant Jackson's supervisor.

Turning next to the allegations against Defendant Mohr, the only pertinent allegations are that Mr. Dehler wrote to Defendant Mohr regarding the request for a Corrections Officer post to be created at the chapel. The complaint alleges as follows:

> On 8-8-14, Plaintiff sent a letter to [Defendant Jackson], Defendant Gary Mohr, and the Chief Inspector at OSC. He let all the parties know that the two grievances were not being ruled on, and asked if they planned on waiving the grievance procedure?
>   . . .
> Defendant Mohr did not reply to Plaintiff's letter of 8-8-14 asking for a C.O. post at the GCI chapel. Plaintiff put Defendant Mohr on notice that no C.O. Post at the GCI chapel denies him the free exercise of his religion under the 1st and 14th Amendments and also violates RLUIPA because inmates have an equal protection right at other faith-based housing units in Ohio prisons being allowed to practice their chosen faith, free of retaliation by the chaplain, and have C.O. posts in their chapels to allow reasonable access to their faith, even on the Sabbath, and other Jewish Holy Days (High Sabbaths).

(Doc. 3 at ¶¶ 61, 64, 93-97). Mr. Dehler argues that Defendant

9

Mohr was responsible for failing to act in response to Mr. Dehler's letter requesting a correctional officer post at the GCI chapel. (Doc. 10 at 3-4).

Reading the complaint in the light most favorable to Mr. Dehler, he has stated a claim against Defendant Mohr apart from whether Defendant Mohr responded to Mr. Dehler's letter. Specifically, the complaint can be read to allege that Defendant Mohr, as the policy maker allegedly in charge of appointing correctional officers, violated Mr. Dehler's right freely to exercise his religion by failing to appoint a correctional officer in order to make it possible for him to worship on the Sabbath. Mr. Dehler's allegations relating to whether the GCI chapel should have a correctional officer post could be read to state a claim that Defendant Mohr abandoned his specific duties in the face of actual knowledge of a breakdown in the proper workings of the department that resulted directly in the violation of Mr. Dehler's rights freely to exercise his religion. That is enough for this claim to survive beyond the pleading stage.

IV.  <u>Recommendation</u>

Based on the above discussion, it is recommended that the Motion to Dismiss with Prejudice of Defendants Director Gary Mohr and Deputy Warden Jerry Spatny (Doc. 7) be granted in part and denied in part. It is recommended that the claims against Defendant Spatny in his individual capacity be dismissed and the remainder of the motion to dismiss be denied.

V.  <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge

10

of this Court shall make a <u>de</u> <u>novo</u> determination of those
portions of the report or specified proposed findings or
recommendations to which objection is made.  Upon proper
objections, a judge of this Court may accept, reject, or modify,
in whole or in part, the findings or recommendations made herein,
may receive further evidence or may recommit this matter to the
magistrate judge with instructions.  28 U.S.C. §636(b)(1).

    The parties are specifically advised that failure to object
to the Report and Recommendation will result in a waiver of the
right to have the district judge review the Report and
Recommendation <u>de</u> <u>novo</u>, and also operates as a waiver of the
right to appeal the decision of the District Court adopting the
Report and Recommendation.  See <u>Thomas v. Arn</u>, 474 U.S. 140
(1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge