```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION

Jesse Prim,                      :

     Plaintiff,                  :    Case No. 2:14-cv-1219

     v.                          :    JUDGE MICHAEL H. WATSON
                                      Magistrate Judge Kemp
Dr. Wanza Jackson,               :

     Defendant.                  :

_____

Grady Krzywkowski,               :

          Plaintiff,             :

     v.                          :    Case No. 2:14-cv-2159

Gary C. Mohr, et al.,            :    JUDGE MICHAEL H. WATSON
                                      Magistrate Judge Kemp
          Defendants.            :
```

REPORT AND RECOMMENDATION AND ORDER

    Plaintiff, Grady Krzywkowski, an inmate currently housed at Grafton Correctional Institution, filed this civil action against several state employees in their individual and official capacities pursuant to 42 U.S.C. §1983.  His case has been consolidated with four other cases and all matters related to these cases are required to be filed under the case Prim v. Jackson, 2:14-cv-1219.  However, all of the document numbers referred to below are filings made in case number 2:14-cv-2159. In his complaint, Mr. Krzywkowski alleges that Defendants violated the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), and that they retaliated against him when he sought to assert his rights.

    There are several motions pending.  Mr. Krzywkowski has filed a motion for preliminary injunction (Doc. 6), two motions

for appointment of counsel (Docs. 16 & 18), a motion for a
preliminary conference (Doc. 10), and a motion to strike
Defendants' response and amended response to the motion for
preliminary injunction (Doc. 19).  In addition, several
Defendants – Director Gary Mohr, Warden Bennie Kelly, Unit
Manager Ron Foster, Corrections Officer Dynnisha White, and
Sergeant Ivan Roberts – have filed a motion to dismiss (Doc. 12).
These motions are addressed below.  The Court will turn first to
the motion to dismiss because it addresses the sufficiency of the
complaint.

## I.  Background

The following allegations are all taken from Mr.
Krzywkowski's complaint.  Because Mr. Krzywkowski is without
counsel, his complaint must be liberally construed.  See Martin
v. Overton, 391 F.3d 710, 712 (6th Cir. 2004) (citing Haines v.
Kerner, 404 U.S. 519 (1972)).  Rather than set forth all of the
allegations in the complaint, this summary will focus on the
allegations relevant to the motion to dismiss.

Mr. Krzywkowski is an active member of the Natsarim faith,
which is categorized as "Messianic Jew" in the Ohio Department of
Rehabilitation and Correction files.  His beliefs prohibit him
from working on the weekly or annual Sabbath days, require him to
eat a kosher diet, and require him to assemble with other persons
of the faith in a worship service, particularly on Sabbath and
High Sabbath Holy Days.  (Doc. 3 at ¶¶ 24-28, 79; Doc. 3-1 at pp.
30-31).

Mr. Krzywkowski arrived at Grafton Correctional Institution
in late February of 2013.  In March of 2013, he met with the
chaplain to obtain permission to participate in the Passover
Seder service and meal.  The chaplain denied that request.  (Doc.
3 at ¶ 30).  In April and May of 2013, Mr. Krzywkowski submitted
informal complaint resolutions in an effort to resolve this

issue, including one directed to Defendant Kelly, who "erroneously" denied the request as being addressed in his previous grievance response. (Doc. 3 at ¶¶ 1-2; Doc. 3-1 at pp. 1-2). On May, 21, 2013, Mr. Krzywkowski submitted a notification of grievance complaining that he was denied access to the Passover/Seder because his religious affiliation as a Messianic Jew was lost, and complaining that both the chaplain and Defendant Kelly were requiring him to submit new religious accommodation requests. (Doc. 3 at ¶ 3; Doc. 3-1 at p. 3). On June 10, 2013, his notification of grievance was denied because Mr. Krzywkowski was already on file as a Messianic Jew and because he had to be approved for kosher meals before he would be allowed to participate in the Passover Seder meal. (Doc. 3 at ¶ 4; Doc. 3-1 at p. 4).

On July 27, 2013, Mr. Krzywkowski submitted a request for religious accommodation so that he could observe the Sabbath, access and participate in Jewish feasts and celebrations, and receive a kosher diet. (Doc. 3 at ¶ 75; Doc. 3-1 at p. 30). On September 2, 2013 he revised that request, seeking, in addition to what he had originally asked for, Messianic study material, access to the chapel for prayer and worship and to watch instructional DVDs, and authorization to possess certain items. (Doc. 3 at ¶ 75; Doc. 3-1 at p. 31). On September 10, 2013, one of the Defendants disapproved the request for kosher meals. (Doc. 3-1 at p. 33). That decision listed Mr. Krzywkowski's religious affiliation as "Jewish Messianic." (Id.).

On December 6, 2013, Mr. Krzywkowski submitted another request for religious accommodation requesting a kosher diet, authorization to receive Messianic DVD instructional material, and Sabbath day proscription from work. (Doc. 3 at ¶ 75; Doc. 3-1 at p. 34).

On February 6, 2014, Defendant Mohr and at least one other

3

Defendant implemented a variance to 72-REG-01.  As revised, the regulation prohibits inmate-led religious services and requires group religious services to be led by or under the immediate control of a chaplain or approved religious services provider.  (Doc. 3 at ¶¶ 53, 124; Doc. 3-1 at page 186-87; see also 72-REG-01, available at http://www.drc.ohio.gov/web/drc_policies/drc_policies.htm).  Mr. Krzywkowski alleges that Grafton Correctional Institution is applying this policy in a discriminatory manner.  (Doc. 3 at ¶ 126).

On March 2, 2014, Mr. Krzywkowski submitted an appeal of the decision regarding religious accommodation, asking for a response to his requests.  (Doc. 3-1 at p. 35).  On April 14, 2014, one of the Defendants issued a decision as to only one part of Mr. Krzywkowski's request for religious accommodation, approving the request for kosher meals.  (Doc. 3-1 at p. 36).

In May of 2014, Mr. Krzywkowski talked to Defendant White about a porter job.  He explained that he was Sabbath-observant and could not work from Friday night to Saturday night.  (Doc. 3 at ¶ 109).  At this point, he did not realize that his applications for work proscriptions were never processed.  (Doc. 3 at ¶ 75).  Defendant White said that she was willing to work around that restriction and gave Mr. Krzywkowski a job cleaning showers.  (Doc. 3 at ¶ 109).  On May 24, 2014, Defendant White claimed that Mr. Krzywkowski failed to work on that day, which was a Saturday, and issued a conduct report.  (Doc. 3 at ¶¶ 108 & 110; Doc. 3-1 at p. 37).  The conduct report also mentioned that Mr. Krzywkowski failed to show up for his job on Thursday, May 22, 2014.  However, there is no indication that a separate conduct report was filed for that day.  On May 29, 2014, Defendant Roberts conducted a hearing regarding the conduct report and issued a decision finding that Mr. Krzywkowski violated prison rules.  He imposed a verbal warning.  (Doc. 3 at

4

¶ 111; Doc. 3-1 at p. 38).

On June 1, 2014, Mr. Krzywkowski submitted another request for religious accommodation seeking Sabbath congregational services and a work proscription for Sabbath days. (Doc. 3-1 at pp. 39-40). On June 3, 2014, Defendant Kelly referred Mr. Krzywkowski's request for a work proscription to another Defendant for review. (Doc. 3 at ¶ 75; Doc. 3-1 at p. 41). On June 5, 2014, Defendants disapproved Mr. Krzywkowski's request for Sabbath congregational services. (Doc. 3-1 at p. 42).

On June 7, 2014, Mr. Krzywkowski filed an informal complaint resolution addressing the conduct report and hearing, and on June 10, 2014, Defendant Foster denied his complaint. (Doc. 3 at ¶¶ 21, 113; Doc. 3-1 at p. 27).

On June 10, 2014, Mr. Krzywkowski appealed the decisions as to his June 1 requests. On June 12, 2014, one of the Defendants approved his request for a work proscription. (Doc. 3-1 at pp. 43-44).

Mr. Krzywkowski filed this case on October 31, 2014.

## II. Motion to Dismiss

### A. Standard

A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. Tyler v. Hillsdale Cnty. Sheriff's Dep't, 775 F.3d 308, 316 (6th Cir. 2014).

A 12(b)(6) motion to dismiss is directed to the complaint and any exhibits attached to it. Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335-36 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is

no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  5A Wright & Miller, Federal Practice and Procedure §1356 (1990).  The moving party is entitled to relief only when the complaint fails to meet this liberal standard.  Id.

On the other hand, more than bare assertions of legal conclusions are required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).  A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  Id. (emphasis in original, internal quotations and citations omitted).  As stated by the First Circuit and cited approvingly by Scheid:

> "[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading.  A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

Id. (citing O'Brien v. DiGrazia, 544 F.2d 543, 546 n.3 (1st Cir. 1976)).  It is with these standards in mind that the motion to dismiss will be decided.

## B.  Discussion

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir.

6

1998) (internal quotations and citations omitted).  A plaintiff
seeking relief under §1983 may bring a claim against a public
official in his or her individual or official capacity.
Individual-capacity claims "seek to impose individual liability
upon a government officer for actions taken under color of state
law." <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991).  In contrast, an
official-capacity claim is "another way of pleading an action
against an entity of which an officer is an agent." <u>Monell v.
Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 n. 55 (1978).  Mr.
Krzywkowski has sued all Defendants in their individual and
official capacities.  In their motion to dismiss, Defendants do
not distinguish between claims brought in an individual and
official capacity.  Based on the arguments in the motion to
dismiss, the Court construes the motion to dismiss as seeking
dismissal of only the claims against the moving Defendants in
their individual capacities.

To state a claim under RLUIPA, an inmate must first
demonstrate that a prison policy substantially burdens a
religious practice.  <u>Haight v. Thompson</u>, 763 F.3d 554, 559-60
(6th Cir. 2014).  RLUIPA provides:

> [n]o government shall impose a substantial burden on
> the religious exercise of a person ... confined to an
> institution ... even if the burden results from a rule
> of general applicability, unless the government
> demonstrates that imposition of the burden on that
> person -(1)is in furtherance of a compelling
> governmental interest; and (2) is the least restrictive
> means of furthering that compelling governmental
> interest.

42 U.S.C. § 2000cc-1(a). The term "government" includes States,
their agencies and departments, and persons acting under color of
state law.  42 U.S.C. § 2000cc-5(4)(A).  "RLUIPA thus requires an
inmate to show that his or her religious exercise was

substantially burdened." Barhite v. Caruso, 377 F. App'x 508, 511 (6th Cir. 2010) (citing Cutter v. Wilkinson, 423 F.3d 579, 583 (6th Cir. 2005)). "An action will be classified as a substantial burden 'when that action forced an individual to choose between "following the precepts of her religion and forfeiting benefits" or when the action in question placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs."'" Barhite, 377 F. App'x at 511 (quoting Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 734 (6th Cir. 2007) (quoting Sherbert v. Verner, 374 U.S. 398, 404 (1963), and Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 717-18 (1981))).

### 1.  Defendant Mohr

Turning first to the allegations against Defendant Mohr, (Doc. 3 at ¶¶ 53, 124, and 126), Mr. Krzywkowski alleges that Defendants Mohr and Jackson "signed and approved a variance in the religious policy that constrains inmates['] ability to assemble for prayer and Bible Study without a Chaplain's presence." (Doc. 3 at ¶53). The variance at issue was 72-REG-01, which provides in part that inmates cannot serve as religious service providers and that congregate activities must be lead by or under the immediate control of a chaplain or approved religious services provider. (See Doc. 3-1 at page 186-87; see also 72-REG-01, available at http://www.drc.ohio.gov/web/drc_policies/drc_policies.htm). Mr. Krzywkowski argues that this violates his right to exercise his religion freely and violates the First Amendment and RLUIPA.

The Court of Appeals has held that "[a]n inmate's claim regarding a constitutional violation is analyzed under the framework set forth in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)." Colvin v. Caruso, 605 F.3d 282, 293

(6th Cir. 2010).  Under the <u>Turner</u> framework, "prison regulations
that impinge on an inmate's constitutional rights are valid if
they are 'reasonably related to legitimate penological
interests.' . . .  This deferential standard is employed in light
of the 'inordinately difficult undertaking' of prison
administration, which 'requires expertise, planning, and the
commitment of resources, all of which are peculiarly within the
province of the legislative and executive branches of
government.'" <u>Id</u>. (quoting <u>Turner</u>, 482 U.S. at 89 & 85).
Specifically, the Court is to consider the four factors outlined
in <u>Turner</u>:

> "First, there must be a valid, rational connection
> between the prison regulation and the legitimate
> governmental interest put forward to justify it." If
> not, the regulation is unconstitutional, and the other
> factors do not matter. Unlike the first factor, the
> remaining factors are considerations that must be
> balanced together: (2) "whether there are alternative
> means of exercising the right that remain open to
> prison inmates"; (3) "the impact accommodation of the
> asserted constitutional right will have on guards and
> other inmates, and on the allocation of prison
> resources generally"; and (4) whether there are "ready
> alternatives" available "that fully accommodate the
> prisoner's rights at de minimis cost to valid
> penological interests."

<u>Spies v. Voinovich</u>, 173 F.3d 398, 403 (6th Cir. 1999) (quoting
<u>Turner</u>, 482 U.S. at 89–91) (internal citations removed).  This is
a fact-specific balancing test, and plaintiffs are not required
to plead every fact relevant to a claim in their complaint but
merely to set forth a facially plausible claim.

Mr. Krzywkowski has set forth a facially plausible claim
under both the First Amendment and RLUIPA by arguing that the
regulation impinges on and substantially burdens his right to
exercise his religion by preventing congregate worship on the
Sabbath.  While Defendants have cited a Court of Appeals decision

to demonstrate that the type of regulation at issue has been upheld as constitutional, Spies v. Voinovich, 173 F.3d 398, 405-06 (6th Cir. 1999) (citations omitted), this case is only at the pleadings stage.  It remains to be seen whether the parties' evidence will result in the same application of the Turner factors here, so it would not be proper to dismiss the claims about this regulation at this time.

### 2. Defendant Kelly

Turning to the allegations against Defendant Kelly, (Doc. 3 at ¶¶ 1, 2, 3, 75, 102, 115 & 130), those allegations address his role in the grievance process or the process relating to requests for religious accommodations.

First, Mr. Krzywkowski alleges that one of the Defendants, Defendant Smith, violated his rights by refusing to let him participate in the Passover Seder event.  However, he does not allege that Defendant Kelly participated directly in the denial.  Rather he alleges that Defendant Kelly received an informal complaint resolution ("ICR") request from Mr. Krzywkowski complaining that Defendant Smith wrongly barred him from the Passover Seder event.  Mr. Krzywkowski alleges that Defendant Kelly incorrectly responded to the ICR by stating that the issue was addressed in a previous ICR.

A mere denial of a grievance is not actionable under §1983 where that denial did not cause or contribute to the constitutional violation.  "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under §1983."  Grinter v. Knight, 532 F.3d 567, 576 (6th Cir. 2008) (citations omitted); see also Argue v. Hofmeyer, 80 Fed. Appx. 427, 430 (6th Cir. 2003) (holding that the plaintiff failed to state a claim concerning the alleged interference with his ability to file grievances "because there is no inherent constitutional right to

an effective prison grievance procedure"). An official's failure to act may rise to the level of a constitutional violation where that failure is an abandonment of "the specific duties of his position ... in the face of actual knowledge of a breakdown in the proper workings of the department," that "result[s] directly in a violation of the plaintiff's" constitutional rights. Hill v. Marshall, 962 F.2d 1209, 1213 (6th Cir. 1992) (involving an official who repeatedly failed to review and respond to the medical needs of the prison population); see also Williams v. McLemore, 247 F. App'x 1 (6th Cir. 2007). However, there is no liability where officials' only involvement was to deny administrative grievances and to fail to remedy the alleged behavior or intervene on the inmate's behalf. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999). Furthermore, the wrongful denial of a grievance "does not present a deprivation of any federal right, as there is no inherent constitutional right to an effective prison grievance procedure." Keenan v. Marker, 23 F. App'x 405, 407 (6th Cir. 2001) (citations omitted). Accordingly, while inmates who exhaust the prison grievance process without obtaining relief may seek relief in the district courts, see, e.g., Walker v. Michigan Dep't of Corr., 128 F. App'x 441, 446 (6th Cir. 2005), such relief would be for the underlying constitutional violation and not for the wrongful denial of the grievance. Accordingly, the allegations regarding Defendant Kelly's response to the ICR do not rise to the level of a §1983 claim. Mr. Krzywkowski's allegations against Defendant Kelly also fail to set forth a claim for relief under RLUIPA.

Second, Mr. Krzywkowski alleges that Defendant Kelly and three other Defendants violated his RLUIPA rights to exercise his religion freely "when they refused to timely process plaintiff's [requests for religious accommodations], resulting in plaintiff not being able to practice his beliefs." (Doc. 3 at ¶ 102).

11

However, apart from this conclusory allegation, there are no allegations of any actions that Defendant Kelly took to either delay or deny Mr. Krzywkowski's requests for religious accommodations.  There are no allegations that the earlier requests for religious accommodations were considered by or should have been considered by Defendant Kelly.  The only allegations specific to Defendant Kelly's role with respect to these requests are that Defendant Kelly was one of several individuals who "signed off" on Mr. Krzywkowski's June 1, 2014 request for a work proscription, that he did so two days after the request was submitted, and that Defendant Kelly was one of three defendants who "approved a work proscription for Sabbaths on 6/12/14." (Doc. 3 at ¶¶ 75 & 115).  These allegations suggest that Defendant Kelly was one of several people who approved Mr. Krzywkowski's June 1, 2014 request for religious accommodation seeking a work proscription for all observed Sabbaths, and that Defendant Kelly did so in a timely manner.

The single conclusory allegation that Defendant Kelly refused timely to process Mr. Krzywkowski's requests for religious accommodation, which is contradicted by the factual allegations relating to Defendant Kelly, is not sufficient to state a claim against Defendant Kelly.  Similarly, a separate conclusory allegation that Defendant Kelly and three other Defendants have "continually erected barriers to discourage and prevent Plaintiff and fellow inmates of the faith access to the chapel to view Messianic-Jewish instructional D.V.D. videos" (doc. 3 at ¶ 130), is not supported by any factual allegations against Defendant Kelly.  The only other allegation against Defendant Kelly is that he is requiring Mr. Krzywkowski to file a new religious affiliation request (doc. 3 at ¶ 3).  However, Mr. Krzywkowski has not pleaded any facts which might demonstrate how that requirement violates his constitutional or RLUIPA rights.

This particular allegation appears to be part of the claim
relating to Defendant Kelly's denial of grievances, which, for
the reasons set forth above, fails to state a viable
constitutional or statutory claim.

### 3.  Defendant Foster

The allegations against Defendant Foster, (Doc. 3 at ¶¶ 21,
113 & Doc. 3-1 at p. 27), are that he wrongly denied an informal
complaint resolution relating to a conduct report filed against
Mr. Krzywkowski for not working on the Sabbath and that Defendant
Foster could have overruled a finding of guilt on the same
conduct report.  As discussed above, a wrongful denial of a
grievance does not violate the Constitution.

Furthermore, to the extent that Mr. Krzywkowski seeks to
hold Defendant Foster liable as a supervisor for a subordinate's
conduct, he cannot do so unless Defendant Foster actually
participated in or encouraged the wrongful behavior.  Persons
sued in their individual capacities under §1983 can be held
liable based only on their own unconstitutional behavior.
Heyerman v. Cnty. of Calhoun, 680 F.3d 642, 647 (6th Cir. 2012)
(citing Murphy v. Grenier, 406 F. App'x 972, 974 (6th Cir. 2011)
(unpublished opinion) ("Personal involvement is necessary to
establish section 1983 liability") & Gibson v. Matthews, 926 F.2d
532, 535 (6th Cir. 1991) (noting that personal liability "must be
based on the actions of that defendant in the situation that the
defendant faced, and not based on any problems caused by the
errors of others, either defendants or non-defendants")).
Consequently, unless the plaintiff's complaint affirmatively
pleads the personal involvement of a defendant in the allegedly
unconstitutional action about which the plaintiff is complaining,
the complaint fails to state a claim against that defendant and
dismissal is warranted.  See Bellamy v. Bradley, 729 F.2d 416,
421 (6th Cir. 1984).  This rule holds true even if the supervisor

13

has actual knowledge of the constitutional violation as long as the supervisor did not actually participate in or encourage the wrongful behavior. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials cannot be held liable under § 1983 for failing to respond to grievances which alert them of unconstitutional actions); see also Stewart v. Taft, 235 F. Supp. 2d 763, 767 (N.D. Ohio 2002) ("supervisory liability under § 1983 cannot attach where the allegation of liability is based on a mere failure to act"). There are no allegations suggesting that Defendant Foster either participated in or encouraged the issuance of the conduct report. For these same reasons, the allegations against Defendant Foster do not state a claim under RLUIPA.

### 4. Defendant White

The allegations against Defendant White, Doc. 3 at ¶¶ 21, 108, 109, 110, relate to the conduct report that she issued against Mr. Krzywkowski for failing to work on the Sabbath. Mr. Krzywkowski alleges that the conduct report and the unusual delay in granting his Sabbath work proscription violated his due process rights and his right freely to exercise his religion under the First and Fourteenth Amendments and RLUIPA. There are no allegations that Defendant White was responsible for the delay in granting his work proscription, so only the issuance of the conduct report is relevant here.

Defendants do not argue that Mr. Krzywkowski fails to state a due process claim about the conduct report. Rather, their sole argument is that these allegations do not constitute a cause of action under the First Amendment or RLUIPA. However, Defendants' arguments fail. "A prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" Flagner

14

v. Wilkinson, 241 F.3d 475, 481 (6th Cir. 2001) (quoting Kent v. Johnson, 821 F.2d 1220, 1224 (6th Cir. 1987)).  The Court of Appeals "has consistently applied the pre-[Religious Freedom Restoration Act] standard set forth in Turner to evaluate challenges by prisoners to restrictions on the free exercise of religion." Flagner, 241 F.3d at 482 (citation omitted).  Mr. Krzywkowski has alleged that observing the Sabbath by not working on the Sabbath is central to his religious beliefs and that his religious beliefs are sincerely held.  It is reasonable to infer that a conduct report punishing him for exercising those beliefs could violate the First Amendment depending on what evidence emerges in discovery relating to the Turner factors.

In response, Defendants state, without citation to legal authority, that issuing a conduct report cannot violate the First Amendment.  That is simply not the case; other courts have found that the issuance of a conduct report may constitute retaliation in violation of an inmate's constitutional rights.  See, e.g., Walker v. Bertrand, 40 F. App'x 988, 990 (7th Cir. 2002) (plaintiff "adequately stated a claim that prison officials issued a conduct report and sentenced him to segregation in retaliation" for filing a lawsuit).  Defendants also argue that the conduct report was for Mr. Krzywkowski's failure to work on both a Thursday and a Saturday, rather than just a Saturday. Defendants do not explain how that fact would defeat a claim that the conduct report - which included the failure to perform work on the Sabbath - burdened Mr. Krzywkowski's right to exercise his religion.  In addition, it appears from the Conduct Report attached to the complaint that the actual Conduct Report was issued for failing to work on a Saturday and that the report only mentions as context his failing to work on a Thursday.  (Doc. 3-1 at p. 37).  Finally, Defendants argue that Mr. Krzywkowski's work proscription was not approved until after the conduct report was

issued, and therefore he violated a prison rule.  That is not
necessarily dispositive because prison rules can be violative of
the First Amendment and RLUIPA.  See, e.g., Spies v. Voinovich,
173 F.3d 398 (6th Cir. 1999).  Accordingly, Defendants' arguments
as to Defendant White are not persuasive at the motion to dismiss
stage.

### 5.  Defendant Roberts

Turning next to the allegations against Defendant Roberts
(Doc. 3 at ¶¶ 110 & 111), Mr. Krzywkowski alleges that this
Defendant conducted the hearing on the conduct report issued by
Defendant White and ultimately issued a Hearing Officer's Report
upholding the Conduct Report.  Prison officials can be held
liable for violating an inmate's constitutional rights if they
uphold a conduct report that punishes an inmate for exercising
constitutional rights.  See, e.g., Wilson v. Greetan, 571
F.Supp.2d 948, 955 (W.D. Wis. 2007).  Defendants argue only that
a prison official cannot be held liable for participating in the
grievance process - an argument which is not relevant here, since
a conduct report differs substantially from an inmate-initiated
grievance - and that the conviction was based on the Thursday
work absence.  The Court has already concluded that the complaint
plausibly claims that it was based on the Saturday absence.
Neither of these arguments is sufficient to justify the dismissal
of the claims against Defendant Roberts.

### 6.  Additional Argument Raised in Reply Brief

In their reply brief, Defendants for the first time argue
that the claims against Defendants for monetary damages are not
permitted.  A party may not ordinarily raise a new issue in a
reply because the opposing party has no opportunity to respond.
See, e.g., Hamilton v. Astrue, 2010 WL 1032646, *6 (N.D. Ohio
March 17, 2010) ("A [party] cannot wait until the reply brief to
make new arguments, thus effectively depriving the opposing party

16

of the opportunity to expose the weaknesses of [those new] arguments").  Accordingly, that argument is not before the Court at this time.

   III.  Motion for Preliminary Injunction

   Mr. Krzywkowski has also moved for a preliminary injunction as to several of his requests.  He has framed his requests as follows:

   -To allow Plaintiff and fellow inmates of the faith daily (if possible if chapel rooms are available) two hour sessions to view Messianic Instructional Videos;

   -To open the chapel for Sabbath Services (on Saturdays);

   -To cease and desist causing disruptions and/or unjust barriers preventing Plaintiff the right to freely exercise his religion;

   -To allow Plaintiff recognition of his religious calendar as it pertains to the Hebrew calendar observed Holy Days, i.e., observed fasts and feasts;

   -To adopt and/or recognize the Natsarim faith under the Messianic Jewish catchment on the ODRC computer system;

   -To allow Plaintiff to observe his religious Holy Days['] dietary accommodations and providing sack meals on Friday evenings to cover the daily caloric minimum for a day[']s worth of food for the Sabbath;

   -To expunge Plaintiff's conduct report from the Institutional Record caused by Plaintiff's protected conduct in observing a rest day on the Sabbath;

   -To allow Plaintiff to receive his incoming mail, religious mail, including but not limited to, legitimate religious publications, books, Messianic Jewish artifacts, without withholding it or rerouting it for unusual delays;

   -To allow Plaintiff to remain in his cell location and cease and desist moving Plaintiff to new cell

17

locations without just cause;

    -To cease and desist threatening Plaintiff the STG
(Security Threat Group: gang member) label for engaging
in protected conduct like filing grievances against the
Chaplain or filing this lawsuit;

    -To refrain from transferring Plaintiff from his
current place of confinement to another prison for
engaging in protected conduct; and,

    -To cease and desist from threats issued to
Plaintiff by third parties via Chaplain Smith or any of
the other defendants.

(Doc. 6 at 2-3).

### A. <u>Standard</u>

The first question the Court must answer is whether it must
hold an evidentiary hearing as to any of the requested grounds
for preliminary injunctive relief.  Federal Rule of Civil
Procedure 65 provides that "[t]he court may issue a preliminary
injunction only on notice to the adverse party."  Fed. R. Civ. P.
65(a)(1).  The Court of Appeals has "interpreted this requirement
to 'impl[y] a hearing in which the defendant is given a fair
opportunity to oppose the application and to prepare for such
opposition.'"  <u>Certified Restoration Dry Cleaning Network, L.L.C.
v. Tenke Corp.</u>, 511 F.3d 535, 552-53 (6th Cir. 2007) (citations
and internal quotations omitted).  However, the Court of Appeals'
"Rule 65 jurisprudence indicates that a hearing is only required
when there are disputed factual issues, and not when the issues
are primarily questions of law."  <u>Id</u>. (citations omitted).
Accordingly, the Court of Appeals adopted this summary of the
rule initially announced by the Eleventh Circuit:

    [W]here facts are bitterly contested and credibility
    determinations must be made to decide whether
    injunctive relief should issue, an evidentiary hearing
    must be held. [However,] where material facts are not
    in dispute, or where facts in dispute are not material
    to the preliminary injunction sought, district courts

18

generally need not hold an evidentiary hearing.

Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 552-53 (6th Cir. 2007) (quoting McDonald's Corp. v. Robertson, 147 F.3d 1301, 1312-13 (11th Cir. 1998)).

In order to determine whether factual disputes are material to the preliminary injunction sought, it is necessary to consider the standard for a preliminary injunction.  In deciding whether to grant a preliminary injunction, the Court considers the following factors:

> (1) whether the movant has a strong likelihood of success on the merits; [2] whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.

Hunter v. Hamilton Cnty. Bd. of Elections, 635 F.3d 219, 233 (6th Cir. 2011) (citation and internal quotation marks omitted). These are "factors to be balanced, not prerequisites that must be met." Welch v. Brown, 551 F. App'x 804, 808 (6th Cir. 2014) (quoting Washington v. Reno, 35 F.3d 1093, 1099 (6th Cir. 1994)). Injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." Overstreet v. Lexington-Layette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th. Cir. 2002).  Further, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." Leary v. Daeschner, 228 F.3d 729, 739 (6th Cir. 2000).

"When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." Libertarian Party of Ohio v. Husted, 751 F.3d 403, 412 (6th Cir.

2014) (internal quotation marks and citation omitted). This is because, with respect to irreparable injury, "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Id. (internal quotation marks and citations omitted). And with respect to the public interest, "it is always in the public interest to prevent the violation of a party's constitutional rights." Id. (internal quotation marks and citations omitted).

## B. Discussion

While Mr. Krzywkowski has based his motion for preliminary injunction on the violation of his RLUIPA rights, (Doc. 6 at 13-17), he also refers to his constitutional rights under the First Amendment. (Doc. 6 at 1; Doc. 6-1 at ¶1). Accordingly, the Court will consider both grounds for the various types of injunctive relief sought.

To demonstrate a strong likelihood of success on the merits of his First Amendment claims, Mr. Krzywkowski must show that prison regulations or actions of prison officials violate his right to free exercise of his religion. Colvin v. Caruso, 605 F.3d 282, 290 (6th Cir. 2010). If he does so, his claim is then analyzed under the Turner framework, and he must show that Defendants' actions are not "reasonably related to legitimate penological interests," or that the balance of the remaining factors weigh in his favor. Id. (citing Turner, 482 U.S. at 89). To demonstrate a strong likelihood of success on the merits of his RLUIPA claims, Mr. Krzywkowski must show that his "religious exercise was substantially burdened." Haight v. Thompson, 763 F.3d 554, 559-60 (6th Cir. 2014). If he does so, he must then demonstrate that the prison policy is not "in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §2000cc-1(a).

20

1. <u>Religious Instructional Videos</u>

Mr. Krzywkowski first seeks an injunction permitting him and his fellow inmates of the faith "daily (if possible if chapel rooms are available) two hour sessions to view Messianic Instructional Videos." He has provided evidence in the form of a sworn declaration that at present, he has access to view Messianic DVDs at the chapel one time per month if he is "lucky." (Doc. 6-1 at p. 5 of 19, ¶33). He states that other inmate faith groups access religious DVDs on a weekly basis, however, he has not stated a claim based on religious discrimination. (<u>Id</u>.) In response, Defendants filed an affidavit stating that Mr. Krzywkowski has access to the videos once a month and, if the chaplain is available, can be viewed on extra days. (Doc. 15-1 at ¶16). Accordingly, there is some dispute as to whether Mr. Krzywkowski has access to the videos slightly more often than once a month or slightly less often than once a month. However, this factual dispute is immaterial because Mr. Krzywkowski has failed to establish that the frequency of his opportunities to view religious videos violates his right to free exercise of his religion or that it substantially burdens his religious exercise.

Turning to the four factors considered for a preliminary injunction, Mr. Krzywkowski has not provided any evidence of the role that watching the DVDs would play in his belief system or the reason that any particular frequency of video watching would be required. Accordingly, he has not demonstrated a strong likelihood of success on the merits. In addition, there is no evidence that viewing the DVDs on the current schedule would cause him to suffer irreparable injury – especially in light of the fact that there is no evidence that the content of the DVDs is unavailable to him in other formats such as audio tapes or written materials. The issuance of an injunction requiring DVDs to be made available on a different schedule is unlikely to cause

substantial harm to others, although it could cause additional expense for GCI.  It is not clear whether the public interest would be served by the issuance of the injunction.  There are no relevant disputes of fact, so a hearing is not necessary as to this request for relief.  Accordingly, Mr. Krzywkowski has failed to carry his burden of demonstrating that the circumstances here demand a preliminary injunction.

### 2.  Sabbath Worship

Mr. Krzywkowski also seeks an injunction directing Defendants to open the chapel for Sabbath Services on Saturdays. He has provided evidence that he is of the Natsarim Faith and that he is "mandated to have assembly with other persons of his faith in a worship service." (Doc. 6-1 at p. 1-2 of 19, ¶¶ 2 & 6).  He has further provided evidence that "it is a fundamental tenet of [his] faith to fellowship with persons of the Natsarim faith on the Sabbath and High Sabbath Holy Days." (Doc. 6-1 at p. 7 of 19, ¶44).  Prison policy prohibits inmate-led religious services and requires group religious services to be led by or under the immediate control of a chaplain or approved religious services provider.  (Doc. 3-1 at page 186-87; see also 72-REG-01, available at http://www.drc.ohio.gov/web/drc_policies/drc_policies.htm).  Mr. Krzywkowski has been denied the right to Saturday Sabbath Services because the chaplain will not come in on Saturdays to oversee the services and will not make other arrangements in order to permit Saturday Sabbath Services.  (Doc. 6-1 at p. 4 of 19, ¶¶ 20-22, 49).  Defendants do not dispute those facts, but merely point out Mr. Krzywkowski's other opportunities to participate in Messianic Jewish activities including Messianic Jewish services every other Sunday.  (Doc. 15-1 at ¶6).

Mr. Krzywkowski has enough evidence of a likelihood of success on the merits to require a hearing.  The parties'

22

materials show that there is a dispute about whether this
restriction is related to a legitimate penological interest.
Mr. Krzywkowski has provided evidence that the GCI chapel is
often open on Saturdays for secular events and that on one
occasion a Christian event took place on a Saturday. (Doc. 6-1
at p. 6 of 19, ¶¶34–35). Similarly, the evidence thus far does
not demonstrate a strong showing that the denial of Sabbath
services is in furtherance of a compelling governmental interest
or that it is the least restrictive means of furthering that
interest.

Because even minimal infringement upon First Amendment
values constitutes irreparable injury and because others cannot
be said to be harmed by enjoining an unconstitutional practice
and it is always in the public interest to prevent violation of a
party's constitutional rights, the other factors could weigh in
favor of a preliminary injunction here. Accordingly, this
request for relief cannot be denied as a matter of law, and a
hearing should be held on this issue.

3. <u>Disruptions and Barriers to Freely Exercise Religion</u>

Mr. Krzywkowski has asked the Court to order Defendants to
"cease and desist causing disruptions and/or unjust barriers
preventing Plaintiff the right to freely exercise his religion."
In his motion for preliminary injunction, he provides examples
such as delays in processing forms, the loss of forms, failure to
answer grievances in a timely manner if at all, and refusing to
contact an outside Messianic minister in order to permit Saturday
worship. (Doc. 6 at 4).

The refusal to contact an outside Messianic minister is part
of the previous claim regarding Saturday worship. Likewise, the
delays and losses of forms, and the delays in responding to or
failure to respond to grievances, relate to the underlying
religious accommodations sought. For example, some of Mr.

23

Krzywkowski's evidence regarding certain lost paperwork had to do
with his request for access to the Passover/Seder service. (See
Doc. 6-1 at p. 2 of 19, ¶¶ 10-15). To the extent there have been
certain disruptions to Mr. Krzywkowski's right to free exercise
of his religion, in order to obtain injunctive relief, he had to
provide evidence specific to the exercises of religion upon which
the disruptions are infringing. He has not done so with respect
to this claim as it is stated. Accordingly, he has not
demonstrated a strong likelihood of success as to the merits of
this claim, nor has he demonstrated an irreparable injury.

There is not enough evidence as to the remaining two
factors. Defendants have made a general argument that all of the
requests for preliminary injunctive relief would cause
substantial harm to Defendants' penological interest and would be
against the public interest in prison security, but they do not
make arguments specific to the particular requests (indeed, those
arguments do not appear to be relevant to all of the requests)
and they also provide no evidence in support of their position.

There are no relevant disputes of fact, so a hearing is not
necessary as to this request for relief. Mr. Krzywkowski has
failed to meet his burden as to this request for relief.

### 4. Recognition of Religious Calendar

Mr. Krzywkowski seeks recognition of his religious calendar
as distinct from the Jewish Orthodox religious calendars in order
to ensure that he receives his Holy Day meals on the correct
days. He has provided evidence that his faith adopts the Hebrew
Religious Holiday Calendar, but that he was permitted to
fast/feast in accordance with the Orthodox Jewish religious
calendar, which violated his beliefs based on "the written
ordinances of the Torah." (Doc. 6-1 at pp. 7-8 of 19, ¶¶ 45 &
46). Defendants do not dispute these facts, but rather argue
that "[i]t is a logistical impossibility for GCI to adopt every

24

calendar for every religious group." (Doc. 15 at 9-10). In
support, Defendants provide evidence that there are approximately
25 different religious groups at GCI and over 2,000 inmates.
They assert that as of December, 2014, there were six Hebrew
Israelites and six Messianic Jews. Further, they point out that
the religious calendar is generated out of the ODRC Central
Office and the number of religions and sects means that GCI
"cannot have a different calendar for each." (Doc. 15-1 at ¶¶8,
9, 10, 15). Mr. Krzywkowski disputes the facts set forth by
Defendants, providing evidence that the ODRC only recognizes ten
religious groups and that there are fewer than 1,300 inmates at
GCI. (Doc. 19 at pp. 5-6; Doc. 19-1 at pp. 3 & 5 of 31, ¶¶ 8-9).

Mr. Krzywkowski has provided some evidence that the refusal
to recognize his religious calendar is not related to a
legitimate penological interest because ODRC recognizes multiple
other religious calendars. (Doc. 19-1 at p. 3 of 31, ¶12).
Furthermore, there is a factual dispute about whether the refusal
to add this religious calendar is the least restrictive means of
furthering any legitimate penological interest. Accordingly,
there are relevant factual disputes related to whether Mr.
Krzywkowski has a strong likelihood of success on the merits.

Because even a minimal infringement upon First Amendment
values constitutes irreparable injury and because others cannot
be said to be harmed by enjoining an unconstitutional practice
and it is always in the public interest to prevent violation of a
party's constitutional rights, the other factors could weigh in
favor of a preliminary injunction here. Accordingly, this
request for relief cannot be denied as a matter of law, and a
hearing is needed on this issue.

　　　　　5. Official Recognition of Natsarim Faith

Mr. Krzywkowski argues that the fact that he is recognized
as belonging to the Messianic Jewish faith is not sufficient to

address his religious needs.  He claims that the ODRC should be required to recognize the Natsarim faith as a subcategory of the Messianic Jewish faith.  He asserts that the failure to recognize the Natsarim faith on the computer system is the reason that he cannot obtain dietary provisions for the Holy Days and Fasts "which he observes from the Biblically correct Hebrew Calendar." (Doc. 6 at p. 5).

To the extent that he is correct, this issue can be raised at the hearing regarding his request for recognition of his religious calendar.  Otherwise, he has failed to provide evidence that the label assigned to his faith in the ODRC computer system violates and burdens his right to free exercise of his religion, nor has he demonstrated an independent irreparable injury.  There is not enough evidence as to the remaining two factors.  There are no relevant disputes of fact, so a hearing is not necessary as to this request for relief.  Accordingly, Mr. Krzywkowski has failed to meet his burden as to a freestanding request for preliminary injunctive relief regarding the categorization of his faith in the computer system, although this relief may be considered when the Court considers his request for recognition of his religious calendar.

6.  Dietary Accommodations and Sack Meals

While Mr. Krzywkowski's request for dietary accommodations and sack meals makes it sound as though he is currently being denied Kosher meals, he does not provide evidence in support of that argument and, in fact, one of the documents he attaches to his complaint is a decision approving Mr. Krzywkowski's request for kosher meals on April 14, 2014.  (Doc. 3-1 at p. 36). Accordingly, it appears that the preliminary injunctive relief sought is for sack meals on Friday evenings providing a day's worth of food for the Sabbath.  In support of this argument, he explains that his faith does not permit him to assist others in

breaking the Sabbath by preparing or cooking his meals on a
Sabbath.  (Doc. 6 at p. 5).  While his declaration does not
specifically support this argument, his motion for preliminary
injunction is signed by him under penalty of perjury and may
constitute evidence.

Defendants provide some evidence that they have a compelling
interest in not providing sack meals.  (Doc. 15-2, ¶¶
6-10).  Mr. Krzywkowski provides a declaration of another inmate
that disputes Defendants' evidence.  (Doc. 19-1 at p. 18 of 31,
¶7).

While there is very little evidence before the Court on this
issue, that evidence is disputed and relevant to the question of
whether Mr. Krzywkowski will be able to establish that the
refusal to provide sack meals violates and burdens his right to
free exercise of his religion.  Accordingly, this request for
relief cannot be denied as a matter of law, and a hearing is
needed on this issue.

7. <u>Expungement of Conduct Report</u>

Mr. Krzywkowski seeks a preliminary injunction requiring
that Defendants expunge the conduct report that was issued when
he observed a rest day on the Sabbath rather than reporting to
work.  There is no dispute that Defendants have now approved Mr.
Krzywkowski's request for a work proscription for the Sabbath.
(Doc. 3-1 at pp. 43-44).  Accordingly, the only question is
whether the conduct report issued before his work proscription
was officially approved should be expunged.

There is very little evidence provided as to the likelihood
of success on the merits on this issue.  This is not an ongoing
violation, and there is no evidence or argument as to why it
matters if the question of expungement is addressed at this stage
in the litigation or at a later stage.  Accordingly, the question
of irreparable injury weighs against preliminary injunctive
relief.  Mr. Krzywkowski has not provided evidence as to the

remaining two factors, and it appears that they would depend to
some degree on whether he could succeed on the merits, but he has
not demonstrated a strong likelihood that he would succeed on the
merits.  There are no relevant disputes of fact, so a hearing is
not necessary as to this request for relief.  Accordingly, Mr.
Krzywkowski has failed to meet his burden as his request for a
preliminary injunction requiring expungement.

8.  <u>Timely Delivery of Mail</u>

Mr. Krzywkowski seeks a preliminary injunction ordering
Defendants to provide his incoming mail to him, including
religious mail, without withholding it or rerouting it for
unusual delays.  In support of this request for relief, he states
that he has "regularly received [his] religious mail sometimes 7-
10 days later than normal." (Doc. 6-1 at p. 8 of 19, ¶48).  He
was informed by another inmate that his incoming regular and
religious mail were being screened by Defendant Smith and by his
agents.  (<u>Id</u>.)  He stated that "[i]n mid-July of 2014 [his]
religious leader sent 19 Messianic Instructional DVD's for the
Messianic Community in care of [Defendant Smith]," and Defendant
Smith said that the DVDs were missing.  (Doc. 6-1 at p. 3 of 19,
¶38).  The DVDs were "suddenly 'found'" after the outside
religious leader who sent the DVDs called.  (<u>Id</u>.)  He also stated
that in September of 2014, three DVDs were missing and only two
were found, but he does not state that those DVDs were lost in
the mail.  (<u>Id</u>.)  Defendants do not dispute the facts set forth
by Mr. Krzywkowski.  Rather, they argue that those facts do not
set forth a violation of constitutional or federal law.

"It is well settled that '[a] prisoner's right to receive
mail is protected by the First Amendment.'" <u>Muhammad v. Pitcher</u>,
35 F.3d 1081, 1084-85 (6th Cir. 1994) (quoting <u>Knop v. Johnson</u>,
977 F.2d 996, 1012 (6th Cir. 1992) (additional citations
omitted)).  "Generally, mail sent to a prisoner may be screened

28

or censored pursuant to regulations and practices 'reasonably related to penological interests.'" <u>Martucci v. Johnson</u>, 944 F.2d 291, 295 (6th Cir. 1991) (quoting <u>Turner v. Safley</u>, 482 U.S. at 89). Incoming mail, even religious mail, can be rejected if justified by a legitimate penological interest. <u>See, e.g.</u>, <u>Winburn v. Bologna</u>, 979 F. Supp. 531, 534 (W.D. Mich. 1997) (upholding regulation rejecting incoming religious mail promoting violence and racial supremacy and finding that the mail policy does not deprive prisoners of all means of expression of religion).

While there is no evidence about the purpose of any screening done to Mr. Krzywkowski's mail, there is also no evidence that any of Mr. Krzywkowski's mail was rejected, nor has he demonstrated a likelihood of success on the merits even if he had experienced delays in receiving religious mail. Mr. Krzywkowski has also not demonstrated any irreparable injury that he would suffer absent the injunction. While neither of the parties has addressed the remaining two factors, if the delay in delivering mail is related to a legitimate screening process, it could indeed cause substantial harm to others and the public interest if safety is compromised in order to expedite the delivery of Mr. Krzywkowski's mail. There are no relevant disputes of fact, so a hearing is not necessary as to this request for relief. Accordingly, Mr. Krzywkowski has failed to meet his burden as to his request for a preliminary injunction ordering Defendants to provide his incoming mail to him, including religious mail, without withholding it or rerouting it for unusual delays.

### 9. <u>Cell Location</u>

Mr. Krzywkowski seeks an order enjoining Defendants from moving him to new cell locations without just cause. He stated that on December 8, 2013, he gave Defendant Smith a written

request to be moved to the Faith-Based Housing Unit, and Defendant Smith "assured [Mr. Krzywkowski] that [he] would be placed on the 'fast track.'" (Doc. 6-1 at p. 3 of 19, ¶19). However, later the same month, instead of being moved to the Faith-Based Housing Unit, Mr. Krzywkowski was moved "to a notorious, chaotic open dorm with 240 other inmates, and moved to a bunk location where water often leaked ...." In or about the second week of January, 2014, he was moved to the Faith-Based Housing Unit.

This evidence is not sufficient to demonstrate a likelihood of success on any claim that Defendants moved him to new cell locations (or that they intend to do so) without just cause in violation of his constitutional or federal rights. Although there are instances where retaliatory cell transfers can rise to the level of a constitutional violation, see, e.g., LaFountain v. Harry, 716 F.3d 944, 949 (6th Cir. 2013) (holding that allegations of a retaliatory transfer of plaintiff to a cell with a mentally ill prisoner who threatened to knife plaintiff and defendants' refusal to grant plaintiff's requests for a different cell in light of the threats stated a claim for violation of plaintiff's First Amendment rights), absent "extraordinary circumstances," decisions about "[c]ell assignments are a normal part of prison life, and thus typically do not amount to an adverse action." Id.

Here, Mr. Krzywkowski has failed to meet his burden of demonstrating a strong likelihood of success on the merits as to his claim regarding the location of his cell. Mr. Krzywkowski has also not demonstrated any irreparable injury that he would suffer absent the injunction. There is no evidence about the remaining factors. There are no relevant disputes of fact, so a hearing is not necessary as to this request for relief. Accordingly, Mr. Krzywkowski has failed to meet his burden as his

request for a preliminary injunction ordering Defendants to refrain from moving him to new cell locations without just cause.

   10.  <u>Threats to Label Plaintiff a Security Threat Group Member</u>

     This request for relief is encompassed by Mr. Krzywkowski's final request for relief, so the Court will combine the two and address them together. (<u>See</u> no. 12 below).

           11.  <u>Retaliatory Transfer</u>

     Mr. Krzywkowski seeks a preliminary injunction ordering Defendants to refrain from transferring him from his current place of confinement to another prison for engaging in protected conduct. This is distinct from Mr. Krzywkowski's final request for relief below because it seeks to enjoin the transfer rather than the threat of transfer and because the threats in the final request for relief are broader than just threatening transfer to another prison. The only evidence that he has presented to demonstrate that he is at some risk of such transfer is evidence that an inmate passed along a threat from Defendant Smith that he could be sent to another prison if he kept writing grievances about Defendant Smith. (<u>See</u> discussion of threats below). Defendants dispute that evidence, stating that Mr. Krzywkowski "has not been threatened with a prison transfer and, therefore his argument is premature." (Doc. 15 at 9).

     Defendants next argue that there is no constitutional or federal right for prisoners to be placed within any particular prison. Defendants are correct that, "[a]s a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse." <u>LaFountain v. Harry</u>, 716 F.3d 944, 948 (6th Cir. 2013) (citation omitted). While the Court of Appeals in <u>LaFountain</u> noted that extraordinary circumstances (such as an existing settlement agreement) may, in some instances, state a claim for retaliation in violation of the

First Amendment, Mr. Krzywkowski has not provided any evidence of extraordinary circumstances.  As a result, Mr. Krzywkowski has failed to meet his burden of demonstrating a strong likelihood of success on the merits as to his claim regarding transfers between prisons.  In light of his failure to demonstrate that a prison transfer would constitute an "adverse" action for purposes of a First Amendment retaliation claim, Mr. Krzywkowski has also not demonstrated any irreparable injury that he would suffer if a threat to transfer him were implemented.  There is no evidence about the remaining factors.

The factual dispute as to whether Mr. Krzywkowski has been threatened with transfer is not relevant to whether a preliminary injunction should issue as to a prison transfer, because even assuming his version of the facts are true, he has failed to meet his burden as a matter of law.  Accordingly, a hearing is not necessary as to this request for a preliminary injunction ordering Defendants to refrain from transferring Plaintiff from his current place of confinement to another prison.

### 12.  Retaliatory Threats

Finally, Mr. Krzywkowski seeks a preliminary injunction ordering Defendant Smith to stop retaliating against him for filing complaints or grievances.  The retaliation, according to Mr. Krzywkowski, takes the form of direct or indirect threats. The evidence that Mr. Krzywkowski provides includes some evidence as to the threats and some evidence as to Defendant Smith's attitude toward grievances.  He recounts a meeting with Defendant Smith in which Defendant Smith "scold[ed]" Mr. Krzywkowski for filing a complaint against him, called Mr. Krzywkowski a liar, demanded an apology, and generally spoke negatively toward him. (Doc. 6-1 at p. 3 of 19, ¶16).  Mr. Krzywkowski has also provided sworn statements from three other inmates - Ryan Salim, John Thomas, and Lambert Dehler - regarding Defendant Smith's threats

32

to other inmates and which indirectly threatened Mr. Krzywkowski.

As an example of this evidence, Mr. Salim states that Defendant Smith threatened to have Mr. Salim classified as a gang leader on the day Mr. Salim's complaint was received. (Doc. 6-1 at pp. 10 & 15 of 19). He also stated that Defendant Smith made other threats at that time, including threatening to move him to a another institution. (Id.) His family and he communicated with the prison and explained the situation, and Mr. Salim stated that he has not received any more threats even though he has had to file additional grievances. (Id.) Mr. Thomas states that Defendant Smith told him to pass the word to all the inmates writing grievances that they would be labeled part of a Security Threat Group, put in the "hole," or sent to another prison if they continued writing grievances about Defendant Smith. (Doc. 6-1 at p. 17 of 19). He and Mr. Krzywkowski both stated that Mr. Thomas passed Defendant Smith's threat on to him. (Doc. 6-1 at p. 6 of 19, ¶37; & p. 17 of 19). Mr. Dehler states that Defendant Smith retaliated against him for filing grievances, including threatening to report him to the Ohio Parole Board and indirectly threatening him through Mr. Thomas. (Doc. 6-1 at p. 18 of 19). Altogether, the evidence that Mr. Krzywkowski has presented is that Defendant Smith indirectly (through another inmate) threatened to label him part of a Security Threat Group, put him in the "hole," or send him to another prison if he continued writing grievances, and that this was consistent with Defendant Smith's attitude and practices.

Defendants argue that Mr. Krzywkowski "has not been labeled [part of] a Security Threat Group." (Doc. 15 at 9). They also argue that Defendants cannot control what other prisoners say to Mr. Krzywkowski and that he cannot prove a constitutional or federal law violation based on these threats. In the Court's view, these arguments do not really address Mr. Krzywkowski's

33

claim. He does not argue that he has actually been labeled part
of a Security Threat Group, but states that Defendant Smith has
indirectly (through another inmate) threatened to label him part
of such a group. Similarly, the argument that Defendants cannot
control what other prisoners say is not relevant to Mr.
Krzywkowski's claim that Defendant Smith asked an inmate to act
as his agent in passing along his threat.

To establish a First Amendment retaliation claim, "a
prisoner must prove that (1) he engaged in protected conduct, (2)
the defendant took an adverse action that is capable of deterring
a person of 'ordinary firmness from continuing to engage in that
conduct,' and (3) 'the adverse action was motivated at least in
part by the [prisoner's] protected conduct.'" Hill v. Lappin,
630 F.3d 468, 472 (6th Cir. 2010) (quoting Thaddeus-X v. Blatter,
175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)). Mr.
Krzywkowski has provided evidence, not contested by Defendants,
that he engaged in protected conduct of filing grievances, and
that the threats he received were motivated by his filing of
grievances. Accordingly, the question is whether he has
demonstrated a strong likelihood of success as to the second
element.

In considering whether an action would be capable of
deterring a person of ordinary firmness, the Court of Appeals
noted that "[a]ctual deterrence need not be shown." Hill v.
Lappin, 630 F.3d 468, 472 (6th Cir. 2010) (quoting Harbin-Bey v.
Rutter, 420 F.3d 571, 579 (6th Cir. 2005) (emphasis in original)
(citation omitted)). "Even the threat of an adverse action can
satisfy this element if the threat is capable of deterring a
person of ordinary firmness from engaging in the protected
conduct." Hill, 630 F.3d at 472 (citation omitted). The Court
of appeals has emphasized that "while certain threats or
deprivations are so de minimis that they do not rise to the level

34

of being constitutional violations, this threshold is intended to weed out only inconsequential actions...." Thaddeus-X, 175 F.3d at 398 quoted in Hill, 630 F.3d at 472-73. Furthermore, the actions threatened do not need to violate constitutional rights; rather, the "retaliation for the exercise of constitutional rights is itself a violation of the Constitution." Hill, 630 F.3d at 473 (quoting Thaddeus-X, 175 F.3d at 394). Therefore, even though there is no constitutional right to remain free of security classifications that would place inmates in segregation or specialized units, Defendants "may not place the prisoner in segregated housing" as a form of retaliation for exercising First Amendment rights. Hill, 630 F.3d at 473.

Because even minimal infringement upon First Amendment values constitutes irreparable injury and because others cannot be said to be harmed by enjoining an unconstitutional practice and it is always in the public interest to prevent violation of a party's constitutional rights, the other factors could weigh in favor of a preliminary injunction here. Accordingly, this request for relief cannot be denied as a matter of law, and a hearing is needed on this issue.

IV. Remaining Motions

The remaining motions relate in some way to Mr. Krzywkowski's motion for a preliminary injunction. Mr. Krzywkowski has filed a motion for a preliminary conference (Doc. 10), which seeks an informal conference in order to determine "what additional proceedings are necessary - regarding the Plaintiff's Motion for Preliminary Injunction." Because any issues which might be addressed in such a conference are covered by this order, that motion (Doc. 10) will be denied.

Mr. Krzywkowski has also filed two motions seeking appointment of counsel. (Docs. 16 & 18). He requests that the Court appoint counsel because he is indigent and proceeding pro

se in a case that involves complex factual and legal issues.  The
Court of Appeals has stated:

> [a]ppointment of counsel in a civil case is not a
> constitutional right.  It is a privilege that is
> justified only by exceptional circumstances.  In
> determining whether "exceptional circumstances" exist,
> courts have examined "the type of case and the
> abilities of the plaintiff to represent himself."  This
> generally involves a determination of the "complexity
> of the factual and legal issues involved."

Lavado v. Keohane, 992 F.2d 601, 605-06 (6th Cir. 1993)

(citations omitted).  In the instant case, Mr. Krzywkowski is

claiming violations of his constitutional and RLUIPA rights, and

seeking a preliminary injunction.  Because the Court recommends

that a hearing be held regarding portions of Mr. Krzywkowski's

motion for a preliminary injunction, the case will enter a stage

of litigation where a pro se litigant will strongly benefit from

having counsel.

The Court may not require an attorney to accept an

appointment to represent a litigant in a civil case.  See Mallard

v. U.S. District Court, 490 U.S. 296 (1989).  The Court can only

request that an attorney meet with a party and enter an

appearance if the attorney and the party come to an agreement

about the representation.  The Court will therefore make this

request.  Mr. Krzywkowski will be advised when an attorney has

agreed either to accept the case or desires to meet with him

prior to making that decision.  The Court notes, however, that

appointment of counsel is conditioned on a final ruling by the

District Judge adopting the report and recommendation regarding

holding a preliminary injunction hearing.

Finally, Mr. Krzywkowski has moved to strike Defendants'

response and amended response to the motion for preliminary

injunction.  (Doc. 19).  That motion will be denied.  Mr.

Krzywkowski has also requested, in the same motion, an extension

of time to file a motion contra Defendants' Response in
Opposition to Plaintiff's Motion for Preliminary Injunction.  The
Court will deny this request without prejudice to Mr.
Krzywkowski's renewal of that request at the evidentiary hearing,
at which time the Court may consider whether any additional
briefing is necessary.

V.  <u>Recommendation and Order</u>

Based on the above discussion, the Court RECOMMENDS that the
motion to dismiss (Doc. 12) be granted in part and denied in
part.  It is recommended that the motion be granted as to the
claims against Defendants Kelly and Foster in their individual
capacity.  It is recommended that the motion be denied as to the
claims against Defendants Mohr, White, and Roberts in their
individual capacity.

Regarding Plaintiff's motion for a preliminary injunction
(Doc. 6), the Court RECOMMENDS withholding a ruling as to a part
of that motion and denying part of that motion.  Specifically,
the Court RECOMMENDS that a preliminary injunction hearing be
held in order to address the following requests for preliminary
injunction:

- the request for a preliminary injunction directing
  Defendants to open the chapel for Sabbath Services on
  Saturdays;

- the request for a preliminary injunction ordering Defendants
  to recognize Plaintiff's religious calendar in order to
  ensure that he receives his Holy Day meals on the correct
  days;

- the request for a preliminary injunction ordering Defendants
  to accommodate Plaintiff's request for sack meals on Friday
  evenings to provide a day's worth of food for the Sabbath;
  and

- the request for a preliminary injunction ordering Defendant
  Smith to stop retaliating against Plaintiff for filing
  complaints or grievances by threatening him either directly
  or indirectly.

The Court RECOMMENDS that the remaining requests for preliminary injunction be denied without a hearing.

Plaintiff's motion for a preliminary conference (Doc. 10) is DENIED.

Plaintiff's motions seeking appointment of counsel (Docs. 16 & 18) are GRANTED conditioned upon on a final ruling by the District Judge adopting the report and recommendation regarding holding a preliminary injunction hearing.

Plaintiff's motion to strike Defendants' response and amended response to the motion for preliminary injunction (Doc. 19) is DENIED.  This denial is without prejudice to the renewal of that request at the evidentiary hearing, at which time the Court may consider whether any additional briefing is necessary.

## VI.  Procedure on Objections

### A.  Procedure on Objections to Report and Recommendation

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the

38

right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

B.  Procedure on Objections to Order

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge