UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jesse Prim,

    Plaintiff,                                  Case No. 2:14–cv–1219

    v.                                       Judge Michael H. Watson
                                          Magistrate Judge Kemp

Dr. Wanza Jackson,

    Defendant.

---

Grady Krzywkowski,

    Plaintiff,                                  Case No. 2:14–cv–2159

    v.                                       Judge Michael H. Watson
                                          Magistrate Judge Kemp

Gary C. Mohr, *et al.*,

    Defendants.

## OPINION AND ORDER

Grady Krzywkowski ("Plaintiff"), a current inmate at Grafton Correctional Institution ("GCI") has, proceeding *pro se*, filed this civil action against several state employees in their individual and official capacities pursuant to 42 U.S.C. § 1983.  His action has been consolidated with four others under Case Number 2:14–cv–1219.  On April 14, 2015, Magistrate Judge Kemp issued a Report and Recommendation ("R&R") addressing several motions filed by Plaintiff and the motion to dismiss filed by Defendants Director Gary Mohr ("Director Mohr"),

Warden Bennie Kelly ("Warden Kelly"), Unit Manager Ron Foster ("Foster"), Corrections Officer Dynnisha White ("Officer White"), and Sergeant Ivan Roberts ("Sergeant Roberts") (collectively, "Defendants"). ECF No. 24. Defendants now object to various findings in the R&R. ECF No. 28. For the following reasons, the Court **OVERRULES** Defendant's objections and **ADOPTS** the R&R.

## I. BACKGROUND

### A. Facts

The following facts are taken almost *verbatim* from Magistrate Judge Kemp's summary of facts in the R&R. R&R 2–5, ECF No. 24 (original citations included therein).

Plaintiff is an active member of the Natsarim faith, which the Ohio Department of Rehabilitation and Correction ("ODRC") categorizes as "Messianic Jew." Among the requirements of his faith are abstaining from work on the Sabbath days, eating a kosher diet, and assembling with other members of the faith in worship services, particularly on Sabbath and High Sabbath Holy Days.

In March 2013, GCI's chaplain denied Plaintiff's request to participate in the Passover Seder service and meal. In April and May 2013, Plaintiff submitted informal complaint resolutions in an effort to resolve the issue. One of those complaints was directed to Warden Kelly, who denied the request as being addressed in a previous grievance response.

On May 21, 2013, Plaintiff submitted a notification of grievance complaining that he was denied access to Passover/Seder because his religious

affiliation as a Messianic Jew was lost and complaining that the chaplain and Warden Kelly were requiring him to submit new religious accommodation requests. This grievance was denied on June 10, 2013 because Plaintiff was already on file as a Messianic Jew and because he was required to be approved for Kosher meals before he would be permitted to participate in the Passover Seder meal.

On July 27, 2013, Plaintiff submitted a request for religious accommodation so that he could observe the Sabbath, access and participate in Jewish feasts and celebrations, and receive a Kosher diet. He revised that request on September 2, 2013, adding a request for Messianic study material, access to the chapel for prayer and worship, permission to watch instructional DVDs, and authorization to possess certain items. On September 10, 2013, one of the Defendants disapproved the request for Kosher meals. That decision listed Plaintiff's religious affiliation as "Jewish Messianic."

On December 6, 2013, Plaintiff submitted another request for a kosher diet, authorization to receive Messianic DVD instructional material, and Sabbath day proscription from work.

On February 6, 2014, Director Mohr and at least one other Defendant implemented a variance to 72–REG–01. As revised, the regulation prohibits inmate-led religious services and requires group religious services to be led by or be under the immediate control of a chaplain or approved religious services provider.

On March 2, 2014, Plaintiff appealed the decision regarding religious accommodation, asking for a response to his requests.  On April 14, 2014, one of the Defendants approved only Plaintiff's request for Kosher meals.

In May 2014, Plaintiff spoke with Officer White about a porter job, explaining that because he was Sabbath-observant, he could not work from Friday night to Saturday night.  At this point, Plaintiff did not realize that his applications for work proscriptions were never processed.  Officer White said she would work around the restriction and gave Plaintiff a job cleaning showers.

On Saturday, May 24, 2014, Officer White issued a conduct report for Plaintiff's failure to work on that day.

On May 29, 2014, Sergeant Roberts conducted a hearing regarding the conduct report, found that Plaintiff violated prison rules, and issued a verbal warning.

On June 1, 2014, Plaintiff submitted another request for religious accommodation seeking Sabbath congregation services and work proscription for Sabbath days.  On June 3, 2014, Warden Kelly referred Plaintiff's request for a work proscription to another Defendant for review.  On June 5, 2014, Defendants denied Plaintiff's request for Sabbath congregational services.

On June 7, 2014, Plaintiff filed an information complaint resolution addressing the conduct report and hearing, and on June 10, 2014, Foster denied his complaint.

On June 10, 2014, Plaintiff appealed the decision regarding his June 1 requests. On June 12, 2104, one of the Defendants approved his request for a work proscription.

Plaintiff filed the instant suit on October 31, 2014, alleging the above actions constituted violations of his rights under the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

## B. The R&R

The Court will address the specific findings of the R&R in its discussion of each objection. In sum, however, Magistrate Judge Kemp made the following recommendations:

- Defendants' motion to dismiss, Case No. 2:14–cv–2159, ECF No. 12, be granted as to the claims against Warden Kelly and Foster in their individual capacities and denied as to the claims against Director Mohr, Officer White, and Sergeant Roberts in their individual capacities.

- Plaintiff's motion for a preliminary injunction, Case No. Case No. 2:14–cv–2159, ECF No. 6, be granted in part. Judge Kemp specifically recommends the Court hold a preliminary injunction hearing to address the following requests and deny all remaining requests without a hearing:
    - the request for a preliminary injunction directing Defendants to open the chapel for Sabbath Services on Saturdays;

- - the request for a preliminary injunction ordering Defendants to recognize Plaintiff's religious calendar in order to ensure that he receives his Holy Day meals on the correct days;
  - the request for a preliminary injunction ordering Defendants to accommodate Plaintiff's request for sack meals on Friday evenings to provide a day's worth of food for the Sabbath; and
  - the request for a preliminary injunction ordering Defendant Chaplain Ronald Smith ("Chaplain Smith") to stop retaliating against Plaintiff for filing complaints or grievances by threatening Plaintiff either directly or indirectly.
- Plaintiff's motion for a preliminary conference, Case No. 2:14–cv–2159, ECF No. 10, be denied.
- Plaintiff's motions seeking appointment of counsel, Case No. 2:14–cv–2159, ECF Nos. 16 & 18, be granted should the Undersigned adopt the R&R regarding holding a preliminary injunction hearing.
- Plaintiff's motion to strike Defendants' response and amended response to the motion for preliminary injunction, Case No. 2:14–cv–2159, ECF No. 19, be denied, but his request for an extension of time to reply to the response be dismissed without prejudice to renewal at the evidentiary hearing.

R&R 37–38, ECF No. 24.

## II. STANDARD OF REVIEW

The R&R addresses both dispositive and non-dispositive motions. 28 U.S.C. § 636(b)(1) provides a different standard of district court review for each type of motion. The district court reviews a Magistrate Judge's decision on non-dispositive matters under the "clearly erroneous or contrary to law" standard and reviews decisions on dispositive matters *de novo*. *United States v. Curtis*, 237 F.3d 598, 602–03 (6th Cir. 2011); Fed. R. Civ. P. 72. Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Defendants object only to Judge Kemp's decisions on the dispositive motions addressed in the R&R, specifically Defendants' motion to dismiss and Plaintiff's motion for preliminary injunction. The Court reviews the Magistrate Judge's decisions on those dispositive motions *de novo*.

## III. ANALYSIS

### A. Defendants' Motion to Dismiss

Defendants first object to Judge Kemp's recommendation that the Court deny Defendants' motion to dismiss as to Plaintiff's claims against Director Mohr, Officer White, and Sergeant Roberts in their individual capacities.

#### 1. Director Mohr

Judge Kemp found that Plaintiff plausibly stated a claim against Director Mohr under the First Amendment and RLUIPA based on Director Mohr's enacting of the regulation prohibiting inmate-lead religious services. R&R 9–10,

ECF No. 24. In so holding, Judge Kemp rejected Defendants' argument that Plaintiff's claim is barred by *Spies v. Voinovich*, 173 F.3d 398, 405–06 (6th Cir. 1999). The court in Spies determined that a regulation at a correctional institute in Marion, Ohio prohibiting inmate-led groups did not violate inmates' free exercise rights. *Spies*, 173 F.3d at 405–06. In so doing, the Court applied the *Turner* factors to the evidence presented and found that the regulation was reasonably related to a legitimate penological interest.[1] *Id*. Judge Kemp explained that because the instant case is only at the pleadings stage, it remains to be seen whether the application of the *Turner* factors to the parties' evidence in this case will counsel the same result.

Defendants object to this finding, again arguing that *Spies* acts as a bar to Plaintiff's claim. Their argument is not well taken. *Spies* did not hold that *all* prohibitions on inmate-led groups are constitutional. Rather, it applied the *Turner* factors to the specific regulation at issue and, given their application to the evidence presented in that specific case, found that the regulation was rationally related to that institution's interest in maintaining security. *Id*. Magistrate Judge Kemp correctly recognized that the constitutionality of 72–REG–01 at GCI will depend on a similar individualized inquiry involving the application of the *Turner* factors to the evidence specific to this case. Accordingly, Defendants' objection is overruled.

---

[1] Courts consider the four *Turner* factors in determining whether a prison regulation that impinges on inmates' constitutional rights is nevertheless valid because it is reasonably related to legitimate penological interests. *Spies*, 173 F.3d at 403.

### 2. Officer White

Judge Kemp found that Plaintiff plausibly stated a claim against Officer White under RLUIPA and the First Amendment based on Officer White's issuing a conduct report punishing Plaintiff for observing the Sabbath instead of working on a Saturday. R&R 15, ECF No. 24. In so doing, Judge Kemp recognized Defendants' argument that because Plaintiff's work proscription was not approved until after Officer White issued the conduct report, Plaintiff's absence from work constituted a violation of prison rules, and thus Officer White's conduct report was justified. *Id*. Judge Kemp rejected that argument, however, finding that "that is not necessarily dispositive because prison rules can be violative of the First Amendment and RLUIPA." *Id*. In other words, although Plaintiff may have violated prison rules by not attending work on Saturday, those prison rules may be unconstitutional.

Defendants object to this finding. They first assert that the issue is not whether the prison rules violate federal law but rather whether Officer White violated Plaintiff's rights. Oddly, however, they then argue that Officer White did not violate Plaintiff's rights because the prison rules at issue are "connected" to the State's interests in maintaining prison security. Even assuming that to be true, however, that is not determinative of the rules' constitutionality. Accordingly, Defendants' objection is overruled.

### 3. Sergeant Roberts

Judge Kemp found that Plaintiff plausibly stated a claim against Officer Roberts under RLUIPA and the First Amendment based on Officer Roberts upholding Officer White's conduct report.

Defendants object on the same ground as their objection to Judge Kemp's finding regarding Officer White—that Plaintiff's work proscription had not been approved when Officer White issued the conduct report. For the same reasons articulated above, Defendants' objection is overruled.

## B. Motion for Preliminary Injunction

As a preliminary matter, in considering Plaintiff's motion for a preliminary injunction, Judge Kemp recognized that although Plaintiff based his motion on alleged violations of RLUIPA, he also refers to his constitutional rights under the First Amendment. R&R 20, ECF No. 24 (citation omitted). Accordingly, Judge Kemp considered both RLUIPA and the First Amendment as grounds for the injunctive relief sought.

Defendants object to Judge Kemp's consideration of the First Amendment as grounds for injunctive relief. They argue it was clearly erroneous to do so given Plaintiff's later statement in his motion to strike that "[f]or purposes of the request for preliminary injunction only, [he would] rely only upon RLUIPA," leaving his First and Fourteenth Amendment claims to be addressed at a later stage in the proceedings. Motion to Strike 2, Case No. 2:14–cv–2159, ECF No. 19 (emphasis in original).

Defendant's argument is not well taken. Construed liberally, especially in light of his *pro se* status, Plaintiff's complaint seeks injunctive relief on both statutory and constitutional grounds. See Compl. 25, Case No. 2:14–cv–2159, ECF No. 3 (alleging statutory and constitutional violations and requesting the Court "[i]ssue an injunction ordering the defendants to cease and desist violating Plaintiff's rights as described above."). In accordance with this request, Plaintiff begins his motion for preliminary injunction by stating he seeks injunctive relief requiring Defendants to comply with RLUIPA "and the rights secured under the United States Constitution which affords all prisoners the right to feely exercise their religion." Mot. Prelim. Inj. 2, Case No. 2:14–cv–2159, ECF No. 6. Moreover, Plaintiff's declaration in support of his motion states: "I make this declaration in support of my motion for a preliminary injunction to ensure that I receive my rights under the First Amendment Free Exercise of Religion Clause, and [RLUIPA]." Krzywkowski Decl. ¶ 1, Case No. 2:14–cv–2159, ECF No. 6-1. The Court gives greater weight to these indications made in Plaintiff's initial motion than to the later assertion in Plaintiff's motion to strike. Accordingly, Defendants' objection is overruled, and the Court turns to Defendants' objections to the four requests for injunctive relief that Judge Kemp determined warrant a hearing.

### 1. Opening the Chapel on Saturdays

Plaintiff first sought an injunction requiring Defendants to open the chapel for Sabbath services on Saturdays.

Judge Kemp determined that Plaintiff presented enough evidence of a likelihood of success on the merits to require a hearing. R&R 22, ECF No. 24. Specifically, he found that there exists a dispute about whether the restriction is related to a legitimate penological interest because evidence indicates the chapel is often open on Saturdays for secular events and was once opened for a Christian event. *Id.* at 22–23. He further found that Defendants lack a strong showing that the denial of Sabbath services is in furtherance of a compelling governmental interest or that it is the least restrictive means of furthering that interest. *Id.* at 23.

Defendants object. They first argue that because evidence demonstrates the chapel has been open on Saturdays, the real issue is whether the prohibition on inmate-led services preventing Plaintiff from using the chapel on Saturdays violates Plaintiff's rights. Defendants then argue that because the Sixth Circuit found in *Spies* that such regulations do not violate inmates' rights, Plaintiff fails to state a claim and is not entitled to an injunction.

First, the evidence Defendants cite does not establish that the chapel is always open and available for use on Saturdays. Rather, it demonstrates that GCI has opened the chapel on Saturdays for secular events without Chaplain Smith present, which, as Judge Kemp explained, casts doubt on the contention that declining to open it for inmate-led Messianic Jew Sabbath services is related to a penological interest. Moreover, even accepting Defendants' premise, their

argument fails as the Court has already found that *Spies* does not foreclose Plaintiff's claim.

Defendants next assert that Plaintiff has other opportunities to worship, including at the Messianic Jewish services held every other Sunday. While this may constitute some evidence of a less restrictive means of furthering a legitimate penological interest, there still remains a dispute as to whether a legitimate penological interest in fact exists.

Defendants last assert that Judge Kemp's finding that Plaintiff had sufficient evidence of a likelihood of success on the merits to require a hearing falls short of satisfying the high standard for obtaining a preliminary injunction. As Judge Kemp stated, however, "even minimal infringement upon First Amendment values constitutes irreparable injury." *Id*. Moreover, Judge Kemp did not recommend granting a preliminary injunction but recommended only that there exists enough evidence of a likelihood of success *to require a hearing*. Accordingly, Defendants' objection is overruled.

### 2. Recognizing Plaintiff's Religious Calendar

Plaintiff next sought recognition of his religious calendar to ensure receipt of high Holy Day meals on the correct days. Defendants argued that it would be logistically impossible for GCI to adopt every calendar for every religious group.

Judge Kemp made two findings with respect to this issue. He first found that Plaintiff provided some evidence that the refusal to recognize his religious calendar is not related to a legitimate penological interest. R&R 25, ECF No. 24.

Specifically, in response to Defendants' evidence that the calendars are generated at the ODRC Central Office, and the high number of religions means that GCI cannot have a different calendar for each, Plaintiff presented evidence that ODRC in fact does recognize multiple other religious calendars. *Id.*

Second, Judge Kemp found that there exists a factual dispute about whether the refusal to add Plaintiff's calendar is the least restrictive means of furthering any such interest. R&R 25, ECF No. 24. Specifically, while Defendant presented evidence that there are approximately twenty-five religious groups at GCI and over 2,000 inmates, Plaintiff presented evidence that ODRC recognizes only ten religious groups and that there are fewer than 1,300 inmates at GCI. *Id.*

Judge Kemp found that in light of these findings, and the fact that other factors could weigh in favor of granting an injunction, a hearing is necessary.

Defendants raise two objections, both of which relate to Judge Kemp's second finding. First, they submit that the least restrictive means of furthering its penological interests is by Plaintiff submitting a religious accommodation request. Second, they argue that Plaintiff's "evidence" that ODRC only recognizes ten religious groups and that there are fewer than 1,3000 inmates at GCI is merely a self-serving, unsupported statement in his declaration. *See* Krzywkowski Decl. ¶¶ 8–9, Case No. 2:14–cv–2159, ECF No. 19-1. As such, they argue, the Court should give greater weight to Defendants' evidence of the number of inmates and religious groups, that being the affidavit of Chaplain Smith and the ODRC website.

Defendants' argument is not well taken. Contrary to Defendants' assertion, Plaintiff's evidence regarding the number of inmates and recognized religious groups is not merely his own declaration. Indeed, he attaches to his declaration a copy of the list of holiday observances with meal accommodations for 2015, which recognizes holidays for ten different religious groups. Ex. A-1, ECF No. 19-1. Moreover, even if the Court resolved the factual dispute in Defendants' favor, Defendants' still do not contradict Plaintiff's evidence indicating that the refusal to recognize his faith's calendar is not related to a legitimate penological interest. Accordingly, Defendants' objection is overruled.

### 3. Providing Sack Meals on Fridays

Plaintiff next sought to receive sack meals on Friday evening providing one day's worth of food for the Sabbath on Saturday.

Judge Kemp found that the very little evidence presented on the issue is disputed and relevant to Plaintiff's likelihood of success on the merits. R&R 27, ECF No. 24. He therefore determined that the request cannot be denied as a matter of a law, and a hearing is necessary. *Id*.

In so finding, Judge Kemp stated that Defendants provided "some evidence" that they have a compelling interest in not providing sack meals. *Id*. Defendants object to this finding, seemingly arguing that they provided more than just "some" evidence. They specifically contend that their evidence that providing meals creates resentment (the affidavits of GCI's Religious Services Administrator and Chaplain Smith) outweighs Plaintiff's evidence (a co-

Defendant's declaration that he saw the sack meals used at another correctional institution and did not witness any resentment). Defendants further argue that there is a valid, rational connection between not providing one day's worth of sack meals and maintaining security and order within the prison.

Defendants' argument is not well taken. The Court agrees that given the dearth of evidence on this issue, the Court declines to make a determination on the issue, without a hearing, based on the credibility of category of disputed evidence. Accordingly, Defendants' objection is overruled.

### 4. Retaliation by Chaplain Smith

Plaintiff next seeks a preliminary injunction ordering Chaplain Smith to stop retaliating against him for filing complaints and grievances.

Judge Kemp found that a hearing was warranted on this issue, as Plaintiff demonstrated a likelihood of success on the merits as to his retaliation claim against Chaplain Smith, and other factors could warrant granting a preliminary injunction. R&R 34–35, ECF No. 24. Judge Kemp specifically found that Plaintiff presented evidence that Chaplain Smith indirectly threatened to label him as part of a Security Threat Group, put him in the "hole," or send him to another prison if he continued writing grievances. *Id.* at 33.

Defendants object to these findings. They first state that Plaintiff "did not grieve" that Chaplain Smith threatened to label him as part of a Security Threat Group, seemingly arguing that his claim fails for failure to exhaust administrative remedies. They further argue that the other acts of retaliation that Plaintiff

alleges—failing to properly forward Plaintiff's requests for accommodation—are meritless, as it would have been impossible for Chaplain Smith to have impeded Plaintiff's accommodation request.

Defendants' argument is not well taken. Even if the Court declined to consider evidence regarding threats to label Plaintiff as part of a Security Threat Group or failing to forward accommodation requests, there remains the evidence cited by Judge Kemp that Chaplain Smith indirectly threatened to put Plaintiff in the "hole" or send him to another prison if he continued writing grievances. Such evidence still supports Plaintiff's retaliation claim.[2] Accordingly, Defendants' objection is overruled.

## C. Qualified and Sovereign Immunities

Defendants last object to the absence of a discussion in the R&R of their qualified and sovereign immunity defenses, which they asserted in response to Plaintiff's motion for preliminary injunction. Their objection is overruled.

With respect to qualified immunity, Defendants assert only that they are entitled to it because Plaintiff "has failed to allege any constitutional or federal law violations, defendants acted reasonably, and plaintiff has failed to show a likelihood of success on the merits." Resp. 10, Case No. 2:14–cv–2159, ECF No. 15. They do not argue that the relevant federal laws were not clearly established at the time of the alleged violation. Regarding the issues proceeding

---

[2] Moreover, to the extent Defendants did intend to raise a failure to exhaust administrative remedies defense, their failure to raise it before Judge Kemp precludes the Court from now considering it on objection.

to a hearing, the Court has already found that Plaintiff has plausibly alleged federal violations and that Plaintiff demonstrated a likelihood of success on the merits of those claims. Moreover, Defendants did not offer any argument as to how or why their actions were reasonable. Accordingly, Defendants have not shown that Plaintiff's request for a preliminary injunction is barred by qualified immunity at this stage, and the absence of an explicit discussion of the issue in the R&R is harmless.

With respect to sovereign immunity, Defendants are correct that Plaintiff's claims against them in their official capacity for money damages are barred by sovereign immunity. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (sovereign immunity "applies to actions against state official sued in their official capacity for money damages.") (citation omitted); *Reid v. State of Tenn.*, 68 F.3d 475, at *2 (6th Cir. 1995) ("Section 1983 does not abrogate Eleventh Amendment immunity.") (citation omitted); *Danford v. Ohio Dept. of Rehab. and Corrs.*, No. 2:10–CV–124, 2011 WL 245588, at *2 (S.D. Ohio Jan. 25, 2011). It does not, however, bar Plaintiffs' claims against them in their official capacity for injunctive relief or in their individual capacities. *See Lawson v. Shelby Cnty., TN*, 211 F.3d 331, 335 (6th Cir. 2002). Accordingly, the claims that Judge Kemp recommended to proceed to a hearing are not barred by sovereign immunity, and the absence of an explicit discussion to that effect was harmless.

## IV. CONCLUSION

For the foregoing reasons, Defendants' objections are **OVERRULED**, and the R&R, ECF No. 24, is **ADOPTED**. Although the Court cannot appoint counsel, it will request that an attorney meet with Plaintiff to determine whether he or she would agree to represent Plaintiff going forward. A hearing will be scheduled accordingly.

The Clerk shall terminate ECF No. 24 in Case No. 2:14–cv–1219 and ECF Nos. 6, 12, and 23 in Case No. 2:14–cv–2159.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**